## CURELL ET ALS. *vs.* INSURANCE COMPANY.

APPEAL FROM THE COURT OF THE FIRST DISTRICT.

Where a cause turns upon the materiality of certain facts, and the Supreme Court are unable to reconcile the verdict with the weight of evidence, the cause will be remanded.

This was an action on a policy of insurance, and resisted by the defendants on the ground, that at the time application was made for insurance, there was on the part of the plaintiffs, a concealment and misrepresentation of a certain fact known to the plaintiffs, and material for the underwriters to be acquainted with.

The insurance was effected on commissions on goods per ship Edward Downes, at and from Belfast, to New-Orleans, and it appeared from the evidence, that when the application for insurance was made, it was stated to the company by one of the plaintiffs, that he had advices from Belfast of the 18th October, at which period the vessel had not sailed. It was fully proved on the trial, that the vessel did sail from Belfast on the sixth of that month. There was a verdict and judgment for the plaintiffs, and the defendants appealed.

*Morse,* for appellants. *Duncan,* for appellees.

*Porter, J.* delivered the opinion of the court.

This is an action on a policy of insurance, by which the defendants underwrote the risks " on supposed commissions on goods, to the consignment of the insured, on the ship Edward Downes, from Belfast to New-Orleans, conditioned that the said company should be liable only for total loss, or the non-arrival of said ship in the port of New-Orleans." The petition states that the commission on the goods shipped to them in this vessel, would have amounted to two thousand seven hundred dollars. That she was lost, and that the defendants refuse to pay the sum covered by the policy.

The answer admits the execution of the policy, but avers, that at the time of the application for the insurance, there was on the part of the plaintiffs both a concealment and misrepresentation of facts known by the plaintiffs, and material to the underwriters to be acquainted with. That by said concealment and misrepresentation, the defendants were deceived and are not liable on the policy.

The cause was submitted to a jury, who not being able to agree was discharged, and on a subsequent day, the case was submitted to a jury of ten persons, under an agreement, that the decision of seven or more of them, should have the same force and effect as a verdict of the whole number sworn, and be considered such. Seven of them found for the plaintiffs, and the defendants appealed, after failing in an attempt to obtain a new trial on the usual allegation, that the verdict was contrary to law and evidence.

The evidence shows the interest of the plaintiffs, the execution of the policy, and the total loss of the vessel. The case therefore, turns on the fact of there being a misrepresentation on the part of the insured, and whether that misrepresentation was material, and affected the risk which the underwriters were to assume.

It is proved very clearly, that there was either a gross mistake, or a misrepresentation, on the part of the person applying for the insurance. He stated to the secretary of the company, that the ship had been at sea about seventy-two days, that she had sailed between the 18th and 25th of

October, but not before the 18th. And it is proved by the secretary, and another witness not connected with the company, that Kilshaw, one of the plaintiffs, distinctly stated that he had letters from Belfast, of date the 18th October, at which period, the ship Edward Downes had not sailed. The evidence establishes she sailed on the sixth October, and that at the time the insurance was effected she had been out ninety instead of seventy-two days.

On the same day the policy was signed, application was made to the defendants, to take a similar risk. The party asking for it, stating that the vessel had been spoken off the the west end of Jamaica, on the first of December, and that he presumed she had sailed in the early part of October, during the conversation, one of the plaintiffs came into the office, and was asked if he had heard the *Edward Downes* had been spoken at the time alluded to off Jamaica. He answered he had not. The secretary of the company declined taking the second risk, observing in the presence of Kilshaw, and that from what was then disclosed to him, he was sorry the company had made the insurance for the plaintiffs. It is proved by another witness, that a report for some days previous to the fifth January, had been current in the city, (which was previous to the date of the policy,) that the vessel had been seen off Jamaica.

The second risk refused by the defendants, was taken by the Louisiana State Insurance Company, with a correct knowledge of all the circumstances connected with the sailing of the vessel, and the time she was spoken off the Island of Jamaica, at a premium of ten per cent. Two and a half per cent. higher than that at which the risk of the plaintiffs was assured by the defendants.

There can be no doubt then, that there was either misrepresentation or error in the statement made to the defendants by one of the plaintiffs, (Kilshaw) that the vessel had sailed between the eighteenth and twenty-fifth October. Whether the fault be imputable to him or his correspondents, the record furnishes us with no means of ascertaining, as no letters from them were produced on the trial.

On the part of the plaintiffs it was proved, that the policy of insurance was not executed until after the defendants were apprised of the vessel being spoken off the west end of Jamaica about the first of December ; that the usual rates of insurance from Great Britain to this port were two and a half per cent., and that vessels coming from England last season had unusually long passages, in consequence of which premiums were not so high as they would have been, had only one vessel been missing.

A secretary to another insurance company in the city swore, that the difference in taking a risk on a vessel which had been out ninety days, and one that had been out seventy-two days, would depend entirely on the description of vessel to be insured, and whether she was a dull sailer or not, and on the state of the weather about the time of her sailing. The ship in question was a good sailer. The office to which he belonged had taken risks on vessels which had been out seventy or eighty days, at from two and a half to three per cent. when they had no knowledge of bad weather having happened, and when vessels had recently arrived after long passages.

The president of the company mentioned, a few days after the policy was signed, that the plaintiffs ought to be notified of some information (the witness does not recollect exactly what) which the company had received of the date of the sailing of the vessel, different from that represented to them by Kilshaw.

Where a cause turns upon the materiality of certain facts, and the Supreme Court are unable to reconcile the verdict with the weight of evidence, the cause will be remanded.

On this evidence the first jury were unable to agree in their verdict, and a majority of the second found for the plaintiffs. With every disposition to reconcile that verdict with the weight of evidence, we have been unable to do so. It appears to us to preponderate in favor of the defendants. As we are, however, unwilling to put our conclusions in opposition to those who from their pursuits in life may be supposed to have a knowledge of the various matters which enter into the inquiry, whether the time of sailing was material to the risk, and as we are at the same time unwilling to yield our impressions to that of a portion of the last jury, we think the course best adapted to promote the ends of justice, will be to remand the cause,

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be annulled, avoided and reversed; and it is further ordered, adjudged and decreed, that the cause be remanded for a new trial, the appellees paying the costs of this appeal.